**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| In re: | * | |
| RUBEN PALAZZO, | * | Case No. 16-11319-TJC |
| | | Chapter 13 |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| RUBEN PALAZZO, | * | |
| Plaintiff, | * | |
| vs. | | |
| | * | Adversary Proceeding No.: 19-00203 |
| BAYVIEW LOAN SERVICING LLC, | * | |
| *et al.* | * | |
| | * | |
| Defendants | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS COMMUNITY**
**LOAN SERVICING LLC F/K/A BAYVIEW LOAN SERVICING LLC'S AND**
**MANUFACTURERS AND TRADERS TRUST COMPANY'S**
**PARTIAL MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Defendants Community Loan Servicing LLC f/k/a Bayview Loan Servicing LLC[1]

("Bayview" or "CLS") and Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T")

(together "Defendants"), move the Court to grant partial summary judgment as to Counts I and II[2]

of Plaintiff Ruben Palazzo's ("Plaintiff").

---

[1] On September 28, 2020, Bayview changed its name to CLS, and CLS is the current servicer of Plaintiff's loan.  *See* CLS Decl., ¶1.

[2] Per this Court's Order entered October 20, 2020, the Court will proceed in this matter only on Counts I and II of the Amended Complaint.  *See* ECF No. 78.

## II.    STATEMENT OF UNDISPUTED FACTS

The undisputed facts contained herein are supported by, *inter alia*, the Affidavit of Jo Ann Snyder ("CLS Decl."), and Exhibits 1-13 to the CLS Decl., attached hereto as **Exhibit A** and incorporated herein by reference, excerpted pages from Plaintiff's Answers to Defendants' First Set of Interrogatories ("Palazzo Interrogatory Responses") attached hereto as **Exhibit B**, Plaintiff's Answers to Defendants' Requests for Production of Documents ("Palazzo Answers to Requests for Production") attached hereto as **Exhibit C**, and the pleadings and filings in the underlying bankruptcy and this action.

### A.        The Mortgage Loan

On March 21, 2007, Plaintiff obtained a mortgage loan ("Loan") from SunTrust Mortgage Inc. ("SunTrust") in the original principal amount of $128,000, the terms of which were included in an Adjustable Rate Note ("Note"). *See* CLS Decl., ¶4 and Ex. 1; Amended Complaint [ECF No. 62[3]], ¶22; Petition [Bankr. ECF No. 1], Schedule D; Bankr. Claims Register, Claim 3-1.

To secure the Note, Plaintiff executed a Deed of Trust, which encumbers the property located at 34811 Old Ocean City Road, Pittsville, Maryland 21850 ("Property), recorded among the Land Records of Wicomico County in Liber 2768 folio 518. *See* CLS Decl., ¶5 and Ex. 2; Petition [Bankr. ECF No. 1], Schedule D; Bankr. Claims Register, Claim 3-1.  On November 21, 2008, the Plaintiff entered into a loan modification with SunTrust, which modified the principal balance on the Loan to $137,090.07 and set the interest rate at 4.00%. *See* CLS Decl., ¶6 and Ex. 3; Amended Complaint [ECF No. 62], ¶23.  Subsequent to the modification, Plaintiff was

---

[3] References to documents filed in the adversary proceeding will be to "ECF No."; references to documents filed in the underlying bankruptcy will be to "Bankr. ECF No." or "Bankr. Claims Register."

delinquent on his Loan payments, and entered into a repayment agreement with SunTrust. *See* CLS Decl., ¶7; Amended Complaint [ECF No. 62], ¶24.

On December 16, 2013, servicing of the Loan was transferred from SunTrust to Bayview and, pursuant to a component servicing[4] relationship, M&T serviced the Loan on Bayview's behalf. *See* CLS Decl., ¶8 and Ex. 4.

### B.       The Plaintiff's Bankruptcy Case and Pre-Plan Payments

On February 5, 2016, Plaintiff initiated his Chapter 13 case in this Court, Case No. 16-11319 ("Bankruptcy Case"). Two weeks later, Plaintiff filed a motion seeking dismissal of the Bankruptcy Case and an order was entered on February 19, 2016 dismissing the case and terminating the automatic stay. *See* Motion to Dismiss [Bankr. ECF No. 14]; Order Dismissing Case [Bankr. ECF No. 15]. Plaintiff subsequently moved to reopen the bankruptcy Case and an order granting the motion to reopen was entered June 17, 2016. *See* Order Reopening Chapter 13 Case [Bankr. ECF No. 34]. During the 4-month period between the Court dismissing and reopening the Bankruptcy Case, Plaintiff's payments were rejected as insufficient to reinstate the Loan. *See* CLS Decl., ¶9.

### C.       Proof of Claim Objection and Plan

On April 5, 2017, Bayview[5] filed a Proof of Claim asserting a secured claim in the amount of $150,548.06, and prepetition arrearages of $25,971.98. *See* Bankr. Claims Register, Claim 3-1. On May 15, 2017, Bayview filed a Notice of Postpetition Mortgage Fees, Expenses and Charges ("PPFN") in the amount of $1,450.00 for fees incurred to review (i) Plaintiff's proposed Chapter

---

[4] Component servicing is similar to subservicing, except all of the documentation, data and transactions are on the M&T servicing system and Bayview employees handling certain aspects of the loan are identified as component servicing employees. *See* CLS Decl., ¶8.

[5] Bayview filed the Proof of Claim but noted in Section 3 that notices and payments should be sent to M&T Bank.

13 plan, (ii) file an objection to the plan, (iii) prepare the Proof of Claim 410A Form, and (iv) for Proof of Claim fees. *See* Bankr. Claims Register, Claim 3. Plaintiff did not file an objection to Bayview's PPFN.[6]

On September 11, 2017, the Plaintiff filed an objection to the pre-petition arrearages asserted in Bayview's Proof of Claim. *See* Objection to Proof of Claim No. 3 [Bankr. ECF No. 81]. On October 11, 2017, Bayview responded to the Plaintiff's objection. *See* Response to Debtor's Objection to Claim [Bankr. ECF No. 82]. On January 25, 2018, the Bankruptcy Court held a hearing on Plaintiff's objection to the Proof of Claim. *See* Proceeding Memo [Bankr. ECF No. 90]. The Bankruptcy Court sustained the Plaintiff's objection to the Proof of Claim and determined that the allowed arrearage claim was $11,816.21. *See* Order Sustaining Objection [Bankr. ECF No. 91] ("POC Order"). The POC Order did not specify how the arrearage claim was to be reduced to $11,816.21 (*e.g.*, eliminating fees versus eliminating principal and interest), nor did it allow or disallow any particular fees, costs, interest, etc. *See id.*

On April 23, 2018, Plaintiff filed a Fourth Amended Chapter 13 Plan (the "Plan"), incorporating the pre-petition arrearages claim of $11,816.21 and proposing to pay that claim in 26 monthly plan payments of $454.27. *See* Plan [Bankr. ECF No. 104]. The Plan further specified that the Plaintiff would maintain his post-petition payments directly to M&T Bank. *Id.* On July 6, 2018, this Court entered an order confirming the Plan ("Confirmation Order"). *See* Confirmation Order [Bankr. ECF No. 106].

      **D.**        **M&T Plan Payments and Statements**

---

[6] As detailed *infra*, notwithstanding the propriety of the charges, Bayview later designated them non-recoverable, meaning Plaintiff was no longer charged for them.

As admitted by Plaintiff, "the post-petition statements sent prior to May 2018 were accurate." Amended Complaint [ECF No. 62], ¶31. Plaintiff contends that the first "violations" of law commence with the May 17, 2018 monthly statement. *See id.*, ¶32.

### (i) M&T's May 17, 2018 Statement

The statement generated on May 17, 2018 ("May 2018 Statement") that was sent to Plaintiff includes a "Bankruptcy Message," specifiying that the statement is being sent to the Plaintiff for informational and compliance purposes only. *See* CLS Decl., ¶13 and Ex. 5. Importantly, the May 2018 Statement specifically states that the statement "**is not an attempt to collect a debt against you**." *Id.* The May 2018 Statement "Explanation of Payment Amount" section includes the $1,450 PPFN fees as "fees and charges" that were filed in the Plaintiff's Bankruptcy Case, to which no objections were filed by Plaintiff. *Id.*

In order to comply with the POC Order, Defendants effectively reduced arrearages owed by moving funds to non-recoverable corporate advances and moving funds from Bayview's general ledger to the Loan (*i.e.*, Bayview paid money towards the Loan). As one example, the May 2018 Statement indicates that $11,581.42 has been received since the last statement as a result of one of these adjustments. *See* CLS Decl., ¶¶11 and 13 and Ex. 5. Therefore, in compliance with the POC Order, Bayview removed disallowed amounts. Bayview complied with the POC Order and only designated $11,816.21 as the pre-petition arrears. *Id.* The May 2018 Statement correctly lists the Plaintiff's pre-petition arrearage as $11,816.21, in conformance with the POC Order. *Id.*

### (ii) M&T's June 18, 2018 Statement:

The statement generated on June 18, 2018 ("June 2018 Statement") that was sent to Plaintiff likewise includes a "Bankruptcy Message" that the statement is being sent to the Plaintiff for informational and compliance purposes only, and specifically states that it "**is not an attempt to collect a debt against you**." *See* CLS Decl., ¶14 and Ex. 6. The June 2018 Statement

"Explanation of Payment Amount" section includes the $1,450 PPFN fees as "fees and charges" that were filed in the Plaintiff's Bankruptcy Case, to which no objections were filed by Plaintiff. *Id*.   The June 2018 statement correctly lists the Plaintiff's pre-petition arrearage as $11,816.21. *Id*.

### (iii)   June 21, 2018 Payoff Statement:

On June 21, 2018, upon Plaintiff's request for a payoff statement, M&T's foreclosure counsel, McCabe, Weisberg & Conway LLC provided a payoff statement to Plaintiff ("June 2018 Payoff"). *See* CLS Decl., ¶15 and Ex. 7; Amended Complaint [ECF No. 62], ¶47.  The June 2018 Payoff included amounts for the principal balance in the amount of $123,730.70; forecast interest in the amount of $8,384.40; late charges in the amount of $293.79; escrow advancements in the amount of $731.59; unpaid NSF charges in the amount of $40; bankruptcy fees and costs in the amount of $1,450; suspense balance in the amount of (-)$80.96 and a recording fee in the amount of $50.00. *Id*.

The forecasted interest on the June 2018 Payoff was calculated at a 4% interest rate for 20 months and 10 days based on the contractual due date for a total of $8,384.40. *See* CLS Decl., ¶15 and Ex. 7.   In addition, the late charges in the amount of $293.79 and unpaid NSF charges in the amount of $40 were pre-petition arrears that were included on the June 2018 Payoff as the Payoff is a complete snapshot of the amounts on the loan at the time of payoff generation. *See* CLS Decl., ¶15.  Because the POC Order did not specify how the pre-petition sums were to be reduced, Bayview did not remove late charges and unpaid NSF fees from the pre-petition arrearage claim, however, the transactions described above did effectively reduce the arrearage amount as required by the POC Order. *Id*.  Further, the bankruptcy fees and costs in the amount of $1,450 were the PPFN fees, to which Plaintiff did not file any objections. *Id*.

Plaintiff only requested the June 2018 payoff to confirm that M&T complied with the POC Order and did not intend to pay off the loan.  *See* Amended Complaint [ECF No. 62], ¶46. Importantly, the June 2018 Payoff included language that explicitly stated that "if you are currently in bankruptcy…this is not an attempt to collect a debt, nor is it an attempt to impose personal liability on you for the debt."  *See* CLS Decl., Ex. 7.

### (iv)   M&T's July, August, and September 2018 Monthly Statements:

The statements generated on July 17, 2018 ("July 2018 Statement"), August 17, 2018 ("August 2018 Statement") and September 18, 2018 ("September 2018 Statement") that were sent to Plaintiff includes the same "Bankruptcy Message" and its "Explanation of Payment Amount" section includes the same $1,450 PPFN fees as "fees and charges."  *See* CLS Decl., ¶16 and Exs 8-10.

### E.        Bayview Plan Payments and Statements

On October 16, 2018, servicing of the Loan was completed to Bayview.  *See* CLS Decl., ¶17.  Bayview filed a Transfer of Claim ("TOC") in the Bankruptcy Case on January 16, 2019, which provided that notices and payments should be sent to Bayview's address as listed on the TOC.  *See* Bankr. Claims Register, Claim 3.

### (i) Bayview's October 18, 2018 Statement

The statement generated by Bayview on October 18, 2018 ("October 2018 Statement") that was sent to Plaintiff included a "Bankruptcy Notice" that informed Plaintiff, in relevant part, "This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally."  *See* CLS Decl., ¶18 and Ex. 11.  The October 2018 Statement correctly reflected the pre-petition arrearage of $11,816.21.  *Id.*

### (ii) Bayview's Later Statements and Plaintiff's Payments

Thereafter, from October 2018 to June 2019, Bayview sent the monthly mortgage statements to Plaintiff's counsel, Stephen Hearne.  Mr. Hearne was designated as Plaintiff's attorney based on the on-boarding information that Bayview obtained from M&T.  *See* CLS Decl., ¶19. When the borrower under a loan is in bankruptcy, as a matter of policy, Bayview stops direct communications with the debtor-borrower and communicates solely with the borrower's bankruptcy counsel.  *See* CLS Decl., ¶19.   On June 3, 2019, Mr. Hearne informed Bayview that he did not represent the Plaintiff.  *Id*.  On June 21, 2019, Plaintiff initiated the instant Adversary Proceeding and, per Bayview's policies, all statements and communications to the Plaintiff were directed to Bayview's litigation counsel to be forwarded to Plaintiff.  *See* CLS Decl., ¶20.  Plaintiff was able to discern the monthly payments due on his loan based on the Notices of Payment Changes, regardless of whether the Plaintiff ever received the statements from his former counsel.

### (iii) February 5, 2019 Payoff Statement

Upon Plaintiff's request for another payoff statement, on February 5, 2019, Bayview provided a payoff statement to Plaintiff ("February 2019 Payoff").  *See* CLS Decl., ¶21 and Ex. 12.  The February 2019 Payoff included amounts for the principal balance in the amount of $122,595.80; interest in the amount of $8,635.39; escrow/impound overdraft fees in the amount of $539.19, suspense balance in the amount of (-)$139.48; unpaid late charges in the amount of $293.79; unpaid NSF charges in the amount of $40; recoverable corporate advances in the amount of $1,445.36; and legal fees and costs in the amount of $3,460.00.  *Id*.

Bayview calculated the interest in the amount of $8,635.41 at 4% for 21 months and 4 days based off the contractual due date.  *See* CLS Decl., ¶21 and Ex. 12.   In addition, the late charges in the amount of $293.79 and unpaid NSF charges in the amount of $40 were pre-petition arrears that were included on the June 2018 Payoff as the Payoff is a complete snapshot of the amounts on the loan at the time of payoff generation.  *Id.*  Because the POC Order did not explicitly specific

how the pre-petition sums were to be reduced, Bayview did not remove late charges and unpaid NSF fees from the pre-petition arrearage claim.  *Id*.  Further, the bankruptcy fees and costs in the amount of $1,445.36 is the difference of the PPFN fees in the amount of $1,450 and a credit in the amount of $4.64.  *Id*.  The legal fees and costs in the amount of $3,460 were Bayview's foreclosure counsel fees that were inadvertently included.  *Id*.

Plaintiff only requested the February 2019 Payoff to discern how much was due on the Loan; he admits he did not intend to pay off the Loan.  *See* Amended Complaint [ECF No. 62], ¶48.  The February 2019 Payoff contained a disclaimer that, to the extent there was a bankruptcy or discharge, "this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation."  *See* CLS Decl., Ex. 12.

### (iv) Other Post-Petition Activity

Although the PPFN fees were proper and correctly claimed in accordance with Fed. R. Bankr. P. 3002.1(c), on September 10, 2019, Bayview chose to designate these fees as non-recoverable from the Plaintiff's loan.  *See* CLS Decl., ¶10.

While Plaintiff's Bankruptcy Case was ongoing, Defendants ceased all debt collection and foreclosure activities,[7] did not attempt to foreclose, and did not send any notices of default to Plaintiff.  *See* CLS Decl., ¶22.

On October 20, 2020, another Transfer of Claim was filed transferring the claim from Bayview to CLS.  *See* Transfer of Claim [Bankr. ECF No. 132].

### F.  Chapter 13 Trustee Payments Making Plaintiff Current

---

[7] Plaintiff contends that Defendants were proceeding towards foreclosure because of visual inspections of the property.  *See* Ex. B, Palazzo Interrogatory Requests p. 15/29.  However, the inspections are merely conducted to comply with CLS' investor guidelines and not for any other purposes.  *See* CLS Decl., ¶22.

117001\000001\4831-0536-7806.v2

On or about February 28, 2019, the Chapter 13 Trustee started making payments to M&T on Plaintiff's pre-petition arrears as set forth in the Plan. Because the Chapter 13 Trustee payments were directed to M&T (rather than to Bayview)[8] and subsequently sent by M&T to Bayview, Bayview's monthly mortgage statements accurately reflected only the trustee payments that had been received at the time the statements were generated. *See* CLS Decl., ¶23. The delay in Bayview's receipt and application of the trustee payments was not due to any misapplication or improper activity by any of the Defendants. *Id*.

Furthermore, the application of the trustee payments to the loan were not materially late. Per CLS' monthly statement dated February 16, 2021 ("February 2021 Statement"), the Chapter 13 Trustee's total payments in the amount of $11,816.21 had been correctly applied to the Plaintiff's pre-petition arrearage. *See* CLS Decl., ¶24 and Ex. 13. Importantly, the February 2021 Statement notes that there is no balance remaining on the Plaintiff's pre-petition arrearage. *Id*.

The February 2021 Statement also indicates that the Plaintiff is current on his post-petition payments. *See* CLS Decl., ¶24 and Ex. 13. There is no dispute that as of the February 2021 statement, the Plaintiff was deemed current on his pre-petition and post-petition obligations. *See* CLS Decl., ¶¶24-26 and Ex. 13.

### F.  Mortgage Interest Statements ("1098 Statements")

As a part of servicing the loan, Bayview and CLS have provided copies of 1098 Statements to Plaintiff. *See* CLS Decl., ¶27. The copies of 1098 Statements that are sent to borrowers include the mortgage interest received from the borrower for that particular year as well as a loan transaction history, which includes fees, charges and disbursements that occurred on the loan. *Id*.

---

[8] Although Bayview filed a transfer of claim on January 16, 2019, the Chapter 13 Trustee continued to make payments to M&T until August 2020. *See* Transfer of Claim [Bankr. ECF No. 110]; CLS Decl., ¶23.

The loan transaction history includes all fees, charges and disbursements, even though those amounts were not assessed as recoverable to or payable by Plaintiff.  *Id.*

### G.        The Adversary Proceeding

On June 21, 2019, Plaintiff initiated the instant Adversary Proceeding.  In his initial complaint, Plaintiff asserted three counts:  Count I sought a declaratory judgment establishing the amounts due from plaintiff to defendants, a determination of defendants' entitlement to use alleged unlicensed servicers, and a finding of contempt against defendant Bayview.  *See* Complaint [ECF No 1], ¶¶67-72. Count II sought damages for alleged violations of the Maryland Consumer Debt Collection Act and Maryland's Consumer Protection Act.  *Id.*, ¶¶73- 86.  Count III sought damages under the Maryland Fraud Protection Act.  *Id.*, ¶¶87-95.  On July 28, 2020, Plaintiff filed a motion to amend the complaint and on August 12, 2020, this Court entered an Order Granting Motion Leave to Amend and Supplement Complaint.  *See* Order Granting Motion Leave to Amend [ECF No. 57].

The Amended Complaint asserts four counts: Count I seeks a contempt judgment for Defendants' purported violation of 11 U.S.C. § 1327.  *See* Amended Complaint [ECF No. 62], ¶¶77-82.  Count II seeks judgment for Defendants' purported violation of 11 U.S.C. § 362.  *Id.*, ¶¶83-96.   Count III seeks damages for alleged violations of the Maryland Consumer Debt Collection Act and Maryland's Consumer Protection Act.   *Id.*, ¶¶97-110.[9]   Count IV seeks damages for alleged violations of the Fair Debt Collections Practices Act.  *Id.*, ¶¶111-118.  On July 28, 2020, the Plaintiff moved to withdraw the reference of this Adversary Proceeding to the

---

[9] Count II also sought a declaratory finding as to whether Bayview is entitled to utilize unlicensed servicers under Maryland law.  *See* Amended Complaint [ECF No. 62], Prayer ¶B.ii., but that issue falls squarely within Counts III and IV, which are currently stayed pending the District Court's ruling on the Plaintiff's withdrawal of reference, and does not implicate the automatic stay in any way.

United States District Court for the District of Maryland.  *See* Motion for Withdrawal of Reference [ECF No. 48].  By Order dated August 13, 2020, this Court found that it lacks subject matter jurisdiction over Counts III and IV, and thus those Counts were stayed pending resolution by the District Court on the Plaintiff's motion to withdraw reference.  *See* Memorandum and Order [ECF No. 58].  By Order entered October 20, 2020, the Court ruled that it would proceed in this matter as to Counts I and II of the Amended Complaint.  *See* Order Resolving Motions to Stay [ECF No. 78].

### III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as made applicable by Fed. R. Bankr. P. 7056). In order to demonstrate the absence of a genuine issue of material fact, which would entitle the moving party to prevail upon its motion for summary judgment, the movant need not necessarily support its motion with evidentiary materials which directly negates his opponent's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rather, the movant may meet its burden by pointing out to the court that there is an absence of evidence to support the non-moving party's case.  *See id*.  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp*., 477 U.S. at 324.

## IV.    ARGUMENT

Notwithstanding Plaintiff's parade of horribles in the Amended Complaint, Courts I and II are based upon the sole premise that the Defendants violated the POC Order and sent inaccurate monthly statements.  This Court should grant summary judgment in favor of Defendants because, as detailed herein, the Defendants appropriately carried out the POC Order reducing the arrearage claim to $11,816.21.  Further, Plaintiff's argument regarding the post-petition statements stems from a misinterpretation of the statements that were sent to Plaintiff for *informational purposes only*.  To the contrary, Defendants have not sought to collect any sums from the Plaintiff during his Bankruptcy Case and Defendants have accounted for all pre-petition and post-petition payments made on the loan.  Thus, the claims that Plaintiff asserts against Defendants arising out of these allegations are based upon a flawed premise.  Accordingly, Defendants are entitled to summary judgment in their favor as to Counts I and II of the Amended Complaint.

### A.  Defendants are Entitled to Summary Judgment as Defendants Did Not Violate Section 1327 and a Contempt Judgment is Not Warranted Under § 105(A).

In Count I, Plaintiff contends, without further explanation that Defendants took actions in contravention the confirmed Plan.  *See* Amended Complaint [ECF No. 62], ¶¶79-82.  Section 1327 provides, in pertinent part that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."  *See* 11 U.S.C. § 1327(a).  Although Count I generally references "M&T and Bayview's actions, as described above," without alleging the specific conduct Plaintiffs alleges was improper, the Plan had two pertinent components as regards Defendants: (1) Plaintiff would make his post-petition payments to

Defendants and (2) Plaintiff would cure his arrears of $11,816.21. *See* Plan [Bankr. ECF No. 104]. As such, only violation of these provisions could constitute a violation of 11 U.S.C. § 1327.

**(i) Defendants Adhered to the POC Order and Plan' Pre-Petition Provisions**.

The POC Order reduced pre-petition arrears to $11,816.21 and the Plan provided for the cure of that arrearage through 26 monthly payments of $454.47. *See* POC Order [Bankr. ECF No. 91]; Plan [Bankr. ECF No. 104], ¶2(e)(ii).

There is no dispute that Defendants reduced their claimed arrearages to $11,816.21. Specifically, in order to reduce the initially claimed pre-petition arrears of $25,971.98, Bayview moved expenses to non-recoverable corporate advances and applied funds from its general ledger to the Loan. See CLS Decl., ¶11. These funds offset sums from the Proof of Claim such that the arrearage amount as of the Petition Date reflected the POC Order, and when the trustee concluded payments in February 2021 all amounts due pre-petition had been paid. *See* CLS Decl., ¶¶11 and 24 and Ex. 13. There is no dispute that nothing remains due prepetition. *See* CLS Decl., ¶¶24-25 and Ex. 13.

As set forth in the Plan, the Plaintiff cured his pre-petition arrears by making payments to the Chapter 13 Trustee. The Trustee subsequently disbursed 26 payments in the amount of $454.27 to M&T (and then subsequently to CLS). Upon receipt of the trustee plan payments, Bayview/CLS applied the payments towards the pre-petition arrearage on the Loan. *See* CLS Decl., ¶23. Critically, at the conclusion of the 26 trustee payments, CLS' February 2021 statement indicated that the pre-petition arrears were cured. *See* CLS Decl., ¶24 and Ex. 13. The Defendants have not taken any actions to recover payments on account of Plaintiff's pre-petition arrearage which would be in contravention of the Plan. *See* CLS Decl., ¶¶23-26. The pre-petition default has been cured and Plaintiff has obtained one of the primary benefits of a Chapter 13 Plan – he has cured the pre-petition default on the loan. *See Newcomer v. Litton Loan Servicing, L.P. (In re Newcomer)*, 438

B.R. 527, 542 (Bankr. D. Md. 2011) (noting that one of the primary benefits of a Chapter 13 plan is to cure the pre-petition default on the loan).

Plaintiff claims there was a disconnect between what the trustee claimed was paid and what Bayview reflected as paid in its monthly statements. *See* Amended Complaint [ECF No. 62], ¶¶43-44. This allegation presumes that as soon as a Chapter 13 trustee cuts a check, such payment should and could be immediately reflected as a credit to the Loan balance. As described above, the Chapter 13 trustee sent plan payments to M&T after Bayview filed a transfer of claim with the Court, thus delaying Bayview's receipt of each plan payment and Bayview's ability to reflect it on each monthly statement. That delay however, is not a basis for finding a violation of Section 1327 of the Bankruptcy Court. Simply put, Plaintiff paid $11,816.21 into his Plan, the Chapter 13 trustee paid $11,816.21 to Bayview, Bayview has accounted for each payment, and Bayview's February 2021 statement reflected that no further pre-petition sums were due from the Plaintiff.

### (ii) Defendants Adhered to the Plan' Post-Petition Provisions.

The Plan obligated Plaintiff to maintain post-petition payments directly to Defendants. *See* Plan [Bankr. ECF No. 104], ¶2(e)(ii). Plaintiff has done so. Indeed, there is no dispute that Plaintiff is post-petition current on his loan, and no allegation by Plaintiff that he paid more than his regular post-petition payment, as modified by Notices of Mortgage Payment Changes, in order to be post-petition current. While Plaintiff takes issue with the substance of monthly mortgage statements sent for informational purposes, that is not an issue for Section 1327.

### (iii) There is No Basis for a Contempt Sanction.

As there is no evidence of a Plan violation, a contempt violation[10] pursuant to Section 105 does not arise.

Pursuant to Section 105 of the Bankruptcy Code, a Court may issue an order holding a party in civil contempt when a movant shows, by clear and convincing evidence:

(1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) that the decree was in the movant's "favor";

(3) that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and

(4) that the movant suffered harm as a result.

*United States v. Under Seal* (*In re Grand Jury Subpoena*), 597 F.3d 189, 202 (4th Cir. 2010) (quoting *Ashcraft v. Conoco*, *Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)).

Here, Defendants do not dispute that the Plan and Confirmation Order were validly entered and that they had knowledge of the Plan and Confirmation Order in the Plaintiff's Bankruptcy Case. However, as discussed herein, Defendants' actions did not violate the terms of the Plan or the Confirmation Order.

Further, Plaintiff has failed to allege that he suffered any actual harm or damages as a result of the Defendants alleged violations, let alone the $500,000 of purported "actual damages" sought.

---

[10] The Plaintiff seeks an order finding Defendants in contempt of court willful violations of the POC Order. *See* Amended Complaint [ECF No. 62], ¶7. However, Plaintiff does not include this in Count I or his Prayer for Relief. Nonetheless, as set forth above, the Defendants did not violate the POC Order and thus a finding of contempt is unwarranted.

In the Amended Complaint, Plaintiff alleges he essentially suffered three categories of damages: (1) economic damages because the Defendants failed to property apply his post-petition Loan payments and have claimed larger sums than are due; (2) economic damages because the Defendants added foreclosure costs and fees to the Loan balance; and (3) "emotional damages and losses manifested by frustration, anger, fear, sleeplessness, exacerbated medical conditions and anxiety…" *See* Amended Complaint [ECF No. 62], ¶¶65-67; Ex. B, Palazzo Interrogatory Responses p. 16.

Notwithstanding that the Court need not even entertain the claim of damages, because Plaintiff cannot show Defendants violated the Plan and Confirmation Orders, the asserted damages claim fails in its own right.  As noted in detail above, the Defendants *did* carry out the POC Order, applied each of the Plan payments once it was ultimately received from the Chapter 13 Trustee, and deemed the pre-petition arrearage satisfied once Bayview had received $11,816.21 in plan payments.  Plaintiff's assertion that Defendants added foreclosure costs and fees to the Loan balance is based upon a single error in the February 2019 statement, which included Bayview's pre-petition foreclosure counsel fees.  Those foreclosure fees were removed from the Loan after the February 2019 statement and no attempts to collect them was ever made.  Moreover, Plaintiff mistakes entries on his monthly statements and the tax forms, despite those amount not being charged to him.  *See* CLS Decl., ¶12.  There is no genuine issue of material fact as to the Defendants' application of Plan payments, or whether Defendants' application resulted in inappropriate fees or charges that could constitute actual damages.

Finally, Plaintiff cannot establish that he is entitled to damages for emotional distress.  As the Fourth Circuit has warned, "not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims." *Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 241 (4th Cir.2009).  For that reason, "an award of compensatory

emotional distress damages requires evidence 'establish[ing] that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a ... violation occurred supports an award of compensatory damages." *Doe v. Chao*, 306 F.3d 170, 180 (4th Cir. 2002). Plaintiff has failed to produce any documentation to support his emotional distress allegations and has not provided any medical or mental health records to support or supplement his claims. *See* Ex. C, Palazzo Answers to Requests for Production. To the contrary, Plaintiff claims non-specific fear, anxiety, depression, and a negative impact on his marriage with no apparent physical symptoms.

In conclusion, Defendants are entitled to summary judgment as they did not violate Section 1327 and there is no basis for a contempt finding against Defendants under Section 105.

### B. Defendants are Entitled to Summary Judgment as They Did Not Violate Section 362.

In Count II of the Amended Complaint, Plaintiff alleges Defendants violated the automatic stay by (i) failing to account for and apply payments to the loan, (ii) seeking to collect excess sums they were not permitted to collect, (iii) improperly assessed and applied payments to additional interest, and (iv) assessed other costs and charges not approved by this Court. *See* Amended Complaint [ECF No. 62], ¶¶85-94. As a result, Plaintiff seeks "declaratory and monetary findings", specifically, a declaration of the sum that is lawfully owed by the Plaintiff, an order of contempt against Bayview for violating the POC Order, an award of punitive damages, and damages, costs and attorneys' fees assessed against each Defendant. *See* Amended Complaint [ECF No. 62], Prayer ¶B.[11]

---

[11] In his Prayer for Relief, the Plaintiff further requests a declaration as to "the sum that is lawfully owed, if any by Mr. Palazzo to Bayview" and a declaration as to whether Bayview "is entitled to

"A violation of the stay is willful if the creditor knew of the automatic stay and intentionally performed the actions that violated the stay." *Ford Motor Credit Co. v. Hemsley (In re Bennett)*, 317 B.R. 313, 316 (Bankr. D. Md. 2004) (quoting *Barnett v. Edwards (In re Edwards)*, 214 B.R. 613, 620 (B.A.P. 9th Cir.1997)). "The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence that a willful stay violation occurred, that damages were suffered, and that the amount of relief requested is appropriate." *Green Tree Servicing, LLC v. Taylor (In re Taylor)*, 369 B.R. 282, 286 (S.D. W.Va. 2007). For purposes of § 362(k), "actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *Heghmann v. Indorf (In re Heghmann)*, 316 B.R. 395, 405 (B.A.P. 1st Cir.2004). An award of punitive damages, on the other hand, usually requires more than a mere willful violation of the automatic stay. *Id*.

To state a claim for a willful stay violation under 11 U.S.C. § 362, a plaintiff has the burden of pleading and ultimately proving five (5) elements: "(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtor suffered damages." *In re Weatherford*, 413 B.R. 273, 284 (Bankr. D. S.C. 2009).

There is no dispute that the Plaintiff filed his Bankruptcy Case, that Plaintiff is an individual under the automatic stay provision and that the Defendants received notice of the Plaintiff's Bankruptcy Case. However, Plaintiff cannot show that Defendants actions were willful violations of the stay. Further, Plaintiff has failed to demonstrate any harm or damages that he suffered as result of the purported stay violations.

### (i) Defendants have accounted for and applied all payments to the loan.

---

utilize unlicensed servicers under Maryland law…" These concern the other counts, and so any question regarding the use of servicers is not properly before this Court in Courts I and II.

Plaintiff contends that Defendants failed to properly account for all payments received from the Chapter 13 Trustee.  *See* Amended Complaint [ECF No. 62], ¶43.  As set forth above and established during discovery, the Chapter 13 Trustee started disbursing payment to M&T in February 2019.  The trustee payments were incorrectly sent to M&T and then subsequently forwarded to Bayview, processed by Bayview and applied towards the pre-petition arrearage on the Loan.  See CLS Decl., ¶23.  Any purported failure of the Defendants to reflect plan payments on monthly statements was a result merely of the delay caused by the Chapter 13 Trustee sending the payments to M&T instead of Bayview, and the time it then took for payments to be processed. The Plaintiff likewise alleges that Bayview's statements were willfully inaccurate because each statement claimed more money remained due and owing on its Proof of Claim than remained according to the Chapter 13 Trustee's records.  *See* Amended Complaint [ECF No. 62], ¶44. Plaintiff's assertions in paragraphs 43 and 44 of the Amended Complaint are two sides of the same coin; to the extent the latter argument warrants any response, that assertion fails for the same reasons as does the former.  The funds that were disbursed by the Chapter 13 Trustee were applied by Bayview in as timely a manner as possible, and the amounts that remained due and owing on the Proof of Claim were a result of the funds that were received and applied towards the pre-petition arrearage.

Further, as set forth in detail above and as determined during discovery, Plaintiff's direct post-petition payments were applied in as timely a manner as possible.  The post-petition payments were received by Bayview's cashiering department, processed and then applied to the Loan.  *Cf.* CLS Decl., ¶24 and 26 (Plaintiff current on the Loan).  If any of the monthly mortgage statements showed that the payments had not been applied, that is the result of a mere timing issue, i.e. payments were mailed in and were being processed when a statement was generated.  Simply put,

20

the Defendants have not violated the automatic stay, and are thus entitled to summary judgment on Count II of the Amended Complaint.

### (ii) Defendants did not seek to collect sums they were not permitted to collect.

Defendants have not attempted to collect any sums from the Plaintiff during his Bankruptcy Case. All of the statements sent to the Plaintiff were purely for informational purposes only. A creditor who provides notice that has an informative purpose, rather than one amounting to an attempt to collect, does not violate the automatic stay. *See In re Pultz*, 400 B.R. 185, 190-92 (Bankr. D. Md. 2008) (informational statement did not violate they stay); *In re Crespo Torres*, 532 B.R. 195, 202 (Bankr. D. P.R. 2015) (letter notifying the debtor that account had been sold and payments should be directed to new account holder did not violate the stay); *In re Sciortino*, 561 B.R. 569, 579 (Bankr. N.D. Ga. 2016) (mailing a letter with no language indicating adverse consequences in event of nonpayment and provided for an informational purpose does not violate the stay). Indeed, Local Bankruptcy Rule 4001-6 specifically contemplates that creditors may continue to provide monthly loan statements to Debtors:

> Creditors and lessors may continue to provide customary notices, including, but not limited to, monthly statements, payment coupons, and escrow adjustment analyses to debtors regarding post-petition account activity. …

> The creditor's or lessor's actions outlined in the immediately preceding paragraph shall not be considered a violation of the automatic stay.

Local Bankruptcy Rule 4001-6. Furthermore, at least one court has stated that "[a] secured creditor should be encouraged to send out payment coupons, envelopes and periodic statements if a debtor has filed a statement that the debtor plans to keep property subject to secured debt and to make payments. Debtors frequently complain to the court that they want to make their payments, but their creditors do not cooperate by providing payment coupons. Secured creditors hesitate to

provide such cooperation for fear of violating the automatic stay or the discharge injunction." *In re Henry,* 266 B.R. 457, 471 (Bankr. C.D. Cal. 2001).

Here, each statement clearly stated that it was for informational purposes and not an attempt to collect a debt against Plaintiff.

### (iii) Defendants did not improperly assess and apply payments to additional interest on the loan.

Plaintiff contends that the June 2018 Payoff and February 2019 Payoff included inaccurate interest due and owing on the loan. *See* Amended Complaint [ECF No. 62], ¶¶47a and 49b. Plaintiff bases these assertions on the mistaken belief that the POC Order specified the amounts that the $11,816.21 arrearage comprised. *See* Amended Complaint [ECF No. 62], ¶¶29, 47(a)-(b), 49(b)-(c). However, the POC Order did not set forth how the pre-petition arrears were to be reduced or what the allowed claim consisted of. *See* POC Order [Bankr. ECF No. 91]. As such, Bayview calculated the payoffs based on the reductions it made to comply with the POC Order and the contractual due date. *See* CLS Decl., ¶¶15 and 20 and Exs. 7 and 12. Each payoff statement indicated it was for informational purposes, and Plaintiff admits he only obtained them for informational purposes. *See* Amended Complaint [ECF No. 62], ¶¶46 and 48. As such, the payoff statements did not constitute a violation of the automatic stay. *Accord Redmond v. Fifth Third Bank*, 624 F.3d 793, 801 (7th Cir. 2010) (payoff letters do not violate the stay; "To hold that a payoff letter violates an automatic stay would be preposterous; it would enable debtors to draw banks into violations of bankruptcy law merely by requesting a statement of what they owed.").

### (iv) Defendants did not improperly assess other costs and charges not approved by this Court.

Plaintiff's assertions that Defendants improperly assessed other costs and charges not approved by this Court all stem from the baseless belief that the Defendants did not properly carry out the Court's POC Order, and misinterpretations of the statements. *E.g.,* Amended Complaint

[ECF No. 62], ¶¶33, 45; Ex. B, Palazzo Interrogatory Responses at p. 13.  However, Defendants have not attempted to collect any improper costs or charges while the Plaintiff has been in his Bankruptcy Case.  As set forth above (*see* Section IV.A.iii., *supra*) and established in discovery, Bayview complied with the POC Order by moving expenses to non-recoverable corporate advances and applying funds from Bayview's general ledger to the Loan.  *See* CLS Decl., ¶11. Because the Bankruptcy Court Order did not specifically provide how the pre-petition claim was to be reduced, Bayview reduced the claim in this fashion and some of the late charges and NSF fees remained on the claim.  *See* CLS Decl., ¶¶11, 15, and 21.  Critically, the June 2018 and February 2019 Payoffs were statements provided to the Plaintiff for informational purposes and Defendants did not seek to collect the sums noted on the Payoffs.  The only charges to the account during bankruptcy were costs claimed in the PPFN filed May 15, 2017 in accordance with Fed. R. Bankr. P. 3002.1(c) and which were, in any event, ultimately charged off.  *See* CLS Decl., ¶10 and Ex. 2 (Deed of Trust § 9 [authorizing disbursements for attorneys' fees to be added to the loan]).

### (v) Plaintiff has not established any harm suffered from the alleged automatic stay violation.

Even if the actions alleged by Plaintiff constitute stay violations, which Defendants dispute, the only economic harm Plaintiff claims as a result of the purported violation is $22 for property inspections that were never charged to the Loan nor payable by him.  *See* Ex. B, Palazzo Interrogatory Responses at p. 13.  Aside from that, Plaintiff claims attorneys' fees he has incurred in the Bankruptcy Case and present adversary proceeding.  As to non-economic damages, Plaintiff claims he has suffered emotional distress.  *See id*., p. 14.

In order to establish emotional distress damages, under 11 U.S.C. § 362(k)(1), an individual must: "(1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as

117001\000001\4831-0536-7806.v2

distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process)." *In re Seaton*, 462 B.R. 582, 602 (Bankr. E.D. Va. 2011) (citation omitted). Fleeting or trivial anxiety or distress is insufficient to support an award; the individual must suffer significant emotional harm. *Id*. Here, Plaintiff alleges that he experienced anxiety and physical and emotional distress manifestations which included depression, frustration, worry, and fear that Defendants were improperly applying his payments and tracking the loan towards foreclosure. *See* Amended Complaint [ECF No. 62], ¶¶65-67; Ex. B, Palazzo Interrogatory Responses at pp. 14-16. Plaintiff has failed to provide any documentation to support his emotional distress, does not claim it manifested into physical disability, and has not provided any medical or mental health records to support the same. *See* Ex. C, Palazzo Answers to Requests for Production. As raised previously, there is no evidence of severe emotional distress. *Id*. On the contrary, Plaintiff's evidence shows his mental state was in large part attributable to filing bankruptcy in the first place and pre-petition foreclosure efforts, rather than any violation of the stay. *See* Ex. B, Palazzo Interrogatory Responses at p. 14. Moreover, during the Bankruptcy Case, Defendants did not attempt to collect any debts, did not attempt to foreclose, and did not send notices of default to Plaintiff. *See* CLS Decl., ¶22. For the relevant time period after the Petition Date, Plaintiff cannot establish or demonstrate any support for an award of damages under 11 U.S.C. § 362(k).

Therefore, Defendants are entitled to summary judgment as Defendants did not violate § 362 and there is no basis for an award of damages for an automatic stay violation.

## V.     CONCLUSION

For the foregoing reasons, Defendants request that summary judgment be entered in their favor. If summary judgment cannot be had in full, Defendants request judgment on those claims each may be entitled to.

DATED:  October 12, 2021                    Respectfully submitted,


                                        _____*/s/ Patricia B. Jefferson*_____
                                        Bradford Bernstein, Fed. Bar No. 13811
                                        Patricia Jefferson, Fed. Bar No. 27668
                                        **Miles & Stockbridge**
                                        11 N. Washington Street, Suite 700
                                        Rockville, MD 20850-4229
                                        301-762-1600
                                        BBernstein@milesstockbridge.com
                                        PJefferson@milesstockbridge.com
                                        *Attorneys for Defendants, Community Loan*
                                        *Servicing LLC f/k/a Bayview Loan Servicing*
                                        *LLC and Manufactures and Traders Trust*
                                        *Company*

117001\000001\4831-0536-7806.v2

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th day of October, 2021 a copy of the foregoing

Memorandum of Law and Exhibits thereto was served via this Court's CM/ECF System upon:

Phillip R. Robinson, Esq.
Consumer Law Center LLC
8737 Colesville Road Suite 308
Silver Spring, MD 20910

_____ */s/ Patricia B. Jefferson*
Patricia B. Jefferson

117001\000001\4831-0536-7806.v2